# EXHIBIT A

STATE OF MICHIGAN
IN THE THIRD CIRCUIT COURT
COUNTY OF WAYNE

Brian Jacobs,
Rivka Jacobs,
Gabriella Jacobs,
Jordana Jacobs, and
E.J. through her Next Friend, Brian Jacobs.    Case No.: 2022 _____ CZ

    Plaintiffs.    Hon.

VS

DELTA AIRLINES; and
UNKNOWN JANE DOE FLIGHT ATTENDANT

    Defendants, Jointly and Severally.

---

Solomon M. Radner (P73653)
Radner Law Group PLLC
17515 West Nine Mile Road, Suite 1050
Southfield, MI 48075
T: 877-723-6375 / F: 866-571-1020
Solomon@RadnerLawGroup.com

---

## COMPLAINT

*There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.*

Plaintiffs, herein the "Jacobs Family," by and through counsel, Solomon M. Radner, complains against the Defendants as follows:

### JURISDICTON AND VENUE

1. All Jacobs Family members are residents of Southfield, MI, County of Oakland, State of Michigan. Plaintiff E.J. is a minor, DOB 3/23/2007.

1

2. Delta Airlines is an airline regularly conducts business in the state of Michigan, and is headquartered in Atlanta, GA. The Jane Doe defendant's residence is unknown, but at all pertinent times was an employee of Defendant Delta, and acting in her capacity as such.

3. The facts that give rise to this action took place on April 18, 2022 at Detroit Metro Airport, which is located in Wayne County, MI.

4. Jurisdiction and venue are both proper in Wayne County Circuit Court.

## FACTS

5. Plaintiff Brian Jacobs, SkyMiles #9311025374, and his family, had a terribly unpleasant experience recently, and that is the subject matter of this action.

6. On Monday April 18th, Mr. Jacobs, who is as noticeably Jewish as I am, and his wife and four daughters were boarding Delta flight number # DL 1738. They were walking towards the back of the plane towards their seats in rows 44,45,46 and 47. Without warning or provocation, Mr. Jacobs was rudely and aggressively approached by a flight attendant (Defendant Unknown Jane Doe Flight Attendant) who told him that if he wanted to get to Florida, he had better have his mask fully covering his mouth and nose. As it turns out, Mr. Jacobs' mask had fallen below his nose – an occurrence which was extremely common while the eventually-declared-illegal mask mandates were still in effect.

7. As Mr. Jacobs and his family continued walking towards their seats, Mr. Jacobs was again approached by the same disrespectful Jane Doe flight attendant, who again chastised him and ordered him to pull up his mask if he wanted to get to Fort Lauderdale. She condescendingly repeated "You don't want to go to Fort Lauderdale, do you? I told you to pull up your mask."

8. Meanwhile, Mr. Jacobs was doing his best to ignore the flight attendant's obnoxiousness, while trying to communicate with other passengers on the plane his request that they please switch seats so that the Jacobs family could all sit together; this too happens regularly and passengers are almost always accommodating. Not surprisingly, the passengers agreed to switch around their seats, and the Jacobs family took their seats next to each other, all fully masked.

9. Once the Jacobs family had all taken their seats and their faces were all safely covered with masks, the flight attendant walked by, and Mr. Jacobs asked her what her name was. Instead of simply stating her name, she decided to tell Mr. Jacobs that he was going to be kicked off the plane and condescendingly added that he "must not want to go to Florida." She then walked toward the back of the plane and made a phone call.

10. While the flight attendant was on the phone, Mr. Jacobs approached her attempting to explain that he only asked for her name so he could respectfully refer to her by name instead of "Madam" or "Miss" or Ma'am." Perhaps she believed he was asking to lodge a complaint, which is perhaps why she took the extreme action she then took, IE ensuring that the Jacobs Family was kicked off the plane.

11. Regardless of Mr. Jacobs' intentions or Ms., Jane Doe's misconstruing Mr. Jacobs' request , her immediate response was, "You're out of here. You don't want to go to Florida. You should back up and go sit down and get out of my face." Rather than engaging with such an unprofessional and discourteous person, Mr. Jacobs, fully masked, returned to his seat.

12. While Mr. Jacobs was taking his seat, another Delta representative came and spoke to him about the issue. She claimed that Mr. Jacobs was previously not wearing his mask

3

properly, and asked him if he would wear it properly if he was permitted to stay on the plane. Of course, Mr. Jacobs replied in the affirmative. Mr. Jacobs also mentioned to this new representative that she could review Mr. Jacobs' flight history on Delta to see the many prior Covid-flights that Mr. Jacobs had had taken without ever having a mask-related issue.

13. This new representative politely indicated that she understood and walked off the plane. A few minutes later, yet another Delta representative – this time a young man – approached Mr. Jacobs and asked him to step off the plane to discuss what was going on. Though this request seemed odd, Mr. Jacobs immediately complied with this request.

14. While on the jetway with this younger gentlemen, Mr. Jacobs spoke with the captain of the plane as well as with this aforementioned young man. Unfortunately, the rude and unprofessional Jane Doe flight attendant was present as well. The flight attendant, who quite shockingly was being just as rude to the captain, was asked if she would be ok with Mr. Jacobs on the flight if he promised to keep his mask properly and completely on. She replied with, "No, I don't feel comfortable with him on the plane, and if he stays, I am walking off."

15. Upon information and belief, the Delta captain then requested that this rude flight attendant be removed from the flight and replaced. However, there was another flight attendant threatening to walk off with the rude flight attendant in the event the rude flight attendant was removed. As is well known, Delta was, and perhaps still is, short-staffed; should the two flight attendants had walked off the plane, the flight likely would have been cancelled or significantly delayed.

16. Meanwhile, Mr. Jacobs' wife and four daughters were still all sitting on the plane listening to other passengers loudly assuming that the extra delay was all the Jacobs' family fault – the flight had already been delayed once. Needless to say, Mr. Jacobs' family was growing increasingly uncomfortable while being forced to deal with irate passengers who were all assuming the worst of this family.

17. Rather than insisting to stay on the flight, Mr. Jacobs agreed with the Delta folks on the tarmac to move his family onto the next flight. About ten minutes later the person who appeared to be the on-scene supervisor agreed to reschedule Mr. Jacobs and his family on the next flight to Ft. Lauderdale. Mr. Jacobs advised his family of this development, so they gathered their belongings and walked off the plane. As they walked off off the plane, the other passengers were clapping and cheering, thereby humiliating this poor family beyond the description of words. Mr. Jacobs' daughters were crying as they exited the plane.

18. When the Jacobs family eventually arrived in Florida, they were walking towards the baggage claim area and noticed that same rude and obnoxious Defendant Jane Doe flight attendant **WITHOUT A MASK ON!** As Mr. Jacobs approached her and took his phone out to record her infraction, she noticed Mr. Jacobs approaching and quickly put on a mask.

19. Lastly, to add insult to injury, all of the Jacobs family's luggage, including the stroller for their two-year-old daughter, had arrived on the original flight and had been sitting in the baggage area unattended for hours. Thankfully, nothing was stolen.

20. Mr. Jacobs is and was at all pertinent times noticeably Jewish, and upon information and belief their Jewish faith formed a basis for the harm of which they were victims.

5

## Count 1 – Breach of Contract.

21. Plaintiffs incorporate by refence all prior paragraphs, as if fully restated.

22. Plaintiffs and Defendant were parties to a Contract of Carriage, a full version of which can be found on Delta' website at https://www.delta.com/content/dam/delta-www/pdfs/dl-dgr-master-13-apr21.pdf.

23. Nothing in this contract allows Delta to willy-nilly kick a family off of a plane for simply asking the name of a rude and unprofessional flight attendant. However, that is what Defendants did.

24. In so doing, Defendants breached the contract of carriage they had with Plaintiff's.

25. Defendants breached this contract, and Plaintiffs suffered damages as a result.

## Count 2 – Violation of Title II of the Civil Rights Act, 42 USC 2000a.

26. Plaintiffs incorporate by refence all prior paragraphs, as if fully restated.

27. Title II of the Civil Rights Act (Public Accommodations) prohibits Defendants from discriminating against Plaintiffs on account of their religion.

28. In the instant matter, Defendant kicked Plaintiffs off of the plane for absolutely no reasonable reason.

29. Defendant Jane Doe nastily put her foot down and essentially refused to allow the flight to take off unless the noticeable Jewish Jacobs Family was first removed.

30. Defendant Jane Doe then had another flight attendant threaten to walk off the plane, thereby essentially forcing and/or coercing Delta to kick off the Jacobs Family.

31. Plaintiffs being noticeably Jewish is not a fact that can be ignored, and upon information and belief forms a basis for which Defendants removed the Jacobs Family from the plane.

32. Plaintiffs suffered harm as a result.

## Count 3 – Violation of 49 USC 40127, Discrimination in Air Transportation

33. Plaintiffs incorporate by refence all prior paragraphs, as if fully restated.

34. Plaintiffs were traveling via air transportation, and were not hiding their Jewish identities.

35. Defendants are prohibited from discriminating against individuals, such as Plaintiffs, based on religion.

36. 49 USC 40127(a) states that "an air carrier…may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry."

37. Despite this clear statutory language, Defendants discriminated against Plaintiffs on the basis of Plaintiffs' religious affiliation.

## Count 3. MI Consumer Protection Act (MCPA) MCL 445.901

38. Plaintiffs incorporate by refence all prior paragraphs, as if fully restated.

39. Plaintiffs are consumers as defined by the MCPA.

40. Defendants are merchants engaged in deceptive practices as defined by the MCPA. Specifically, Defendants' practices include but are not limited to:

    a. Using coercion and duress to take advantage of a customer, specifically by publicly announcing in the earshot of the other customers, that the delays were due to the Jacobs family, and also by making it clear to the Jacobs Family that the plane would not depart if they were on the plane.

41. Plaintiffs are requesting of the Court as it relates to this cause of action, for an Order:

    b. Ordering Defendants to immediately cease their illegal activities, as outlined herein.

    c. Ordering Defendants to pay actual damages and attorney fees.

7

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to render a Judgment in their favor and against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) but less than $57,000.00, and any other relief to which this Honorable Court deems Plaintiff to be entitled, together with costs, interest and attorneys' fees so wrongfully sustained.

                      Respectfully submitted,

                        /s/ Solomon M. Radner
                      SOLOMON M. RADNER (P73653)
                      **RADNER LAW GROUP PLLC**
                      Attorney for Plaintiff
                      17515 W 9 Mile Rd, Ste 1175
                      Southfield, MI 48075
                      Solomon@RadnerLawGroup.com
                      T: 877-723-6375

Dated:  December 22, 2022